## SEYMOUR WATER COMPANY ET AL. *v.* CITY OF SEYMOUR.

[No. 20,087. Filed March 30, 1904. Rehearing denied June 8, 1904.]

MUNICIPAL CORPORATIONS. — *Water Works.* — *Complaint.* — *Quieting Title.* — Where, in a complaint to cancel and declare void a contract between a city and a water company, it is alleged that such contract was for 30 to 60 years and at an exorbitant and unreasonable price, exclusive, *ultra vires*, contrary to public policy and the constitution; that such contract had been assigned to a trustee for the bondholders of such company, and said city notified to pay the rentals under said contract to such trustee; that said trustee claims some interest which is adverse to said city, and praying that the defendants be enjoined from claiming or enforcing any rights under such contract, such complaint is not sufficient to quiet title as against such water company, since there is no allegation that plaintiff is the owner of any property or of any interest therein, nor that defendants' claims are adverse or a cloud upon the title, and such complaint is not good to quiet title as against such trustee, since it is nowhere alleged that the water-works has been built, and therefore there is no corporeal tenement out of which a rent could issue. *pp. 124–126.*

PLEADING. — *Construction of.* — A complaint must be viewed from its general scope and structure, and not from disconnected or irrelevant allegations. *p. 126.*

CONTRACT. — *Cancelation of.* — Where in a complaint by a city against a water company for the cancelation of a contract for supplying such city with water, it is not alleged that such water plant has been erected and no reason shown for equitable interference, parties will be left to their remedies at law, since some special reason must be alleged other than that the contract is void in order to invoke aid in the equity court. *pp. 126, 127.*

SAME. — *Rescission.* — Where a paragraph of complaint by a city against a water company for the rescission and cancelation of a contract for failure to perform its contract in furnishing pure and wholesome water and maintaining the agreed pressure for fire purposes shows that such water plant is built and in operation, it must further show a necessity for such remedy, and also the lack of an adequate remedy at law. *p. 129.*

WATERS. — *Water-Works.* — *Mandamus to Perform Contract.* — *Forfeiture.* — Where a municipal corporation has contracted with a private company to furnish such corporation and the inhabitants thereof with pure and wholesome water and to maintain a certain pressure for protection against fire, such company may be compelled by mandate to perform

such contract, and a forfeiture will not be decreed unless it be shown by the necessary allegations that no other remedy would be sufficient. *pp. 130, 131.*

From Jennings Circuit Court; *A. G. Smith*, Special Judge.

Action by the city of Seymour against the Seymour Water Company and others, for the rescission of a contract. From a decree for plaintiff, defendants appeal. *Reversed.*

*Merrill Moores* and *O. H. Montgomery*, for appellants.

*J. H. Shea, C. E. Wood, B. K. Elliott, W. F. Elliott, Frank Littleton, Lincoln Dixon* and *Burt New*, for appellee.

GILLETT, C. J.—This suit was instituted by appellee against appellants. The complaint was in two paragraphs, each of which was challenged by demurrer by each of appellants. The demurrer was overruled, and by proper assignments of error the question as to the sufficiency of said paragraphs is presented for our consideration.

The first paragraph is as follows: "That the plaintiff is a municipal corporation existing under and by virtue of the laws of the State of Indiana. The defendant the Seymour Water Company is a corporation organized under, and existing by virtue of, the laws of the State of Indiana. The defendant the Farmers Loan & Trust Company of New York is a corporation organized under, and existing by virtue of the laws of the state of New York. Merrill Moores, trustee herein, is a citizen of the city of Indianapolis, in the State of Indiana; that on the 7th day of March, 1889, the common council of the city of Seymour, plaintiff herein, passed an ordinance in the words and figures following: [At this point there is set out a copy of an ordinance purporting to grant to one Willett E. McMillan, his heirs and assigns, the right to establish a waterworks system to supply said city and its inhabitants with water, and an undertaking by the city to rent a certain num-

ber of hydrants. Without explanatory averment, there is next set out what purports to be a formal acceptance.] That said city council, by its said action and by its said ordinance, attempted to grant to one Willett E. McMillan an exclusive franchise and monopoly to supply the city of Seymour and its inhabitants with water for a period of from thirty to sixty years, as provided in said ordinance, at an exorbitant and unreasonable price, and for an unreasonable and illegal time, thereby imposing unreasonable burdens upon said city and the inhabitants thereof; that said ordinance attempts to grant an exclusive contract and franchise, and is *ultra vires,* contrary to public policy and the Constitution of Indiana, and is wholly void; that on the 23d day of July, 1889, the said Willett E. McMillan, mentioned in said ordinance, assigned and transferred all his rights and interest to and in said contract to the defendant herein, said Seymour Water Company, and that the defendant the said Seymour Water Company has no right, title, or interest to or in said contract, except as the assignee of said Willett E. McMillan, which assignment is in the words and figures following: 'Seymour, July 23, 1889. For value received I hereby sell, assign, transfer, and set over to the Seymour Water Company all rights of every description growing out of the within contract. Willett E. McMillan.' The plaintiff further avers that on the 1st day of August, 1889, the defendant the Seymour Water Company executed to the defendants the Farmers Loan & Trust Company of the city of New York and Merrill Moores, trustee, a deed of trust and mortgage upon the said property of the said Seymour Water Company in and about the city of Seymour, plaintiff herein. The plaintiff further avers that the said Seymour Water Company assigned to the said defendants, trustees, all the hydrant rentals to be paid by said city to said Seymour Water Company, and directed said city to pay said water rentals to said trustees; that said trustees, because of the premises herein set out, claim to have some

interest in said contract, which claim is adverse to the interest of this plaintiff, and on the same side as the defendant water-works company.   Wherefore the plaintiff prays the court that said contract be revoked and declared to be null and void and of no force and effect; that the said city and its inhabitants be relieved from its burdens; and that the defendants, and each of them, be forever enjoined from attempting to enforce and ever claiming any rights under said contract."

The second paragraph omits the *ultra vires* charges, but alleges, in addition to the other averments of said first paragraph, the following:  "That said defendant the said Seymour Water Company, defendant herein, has fully failed and refused to comply with the terms of said contract in this, to wit:   (1) That said defendant has wholly failed and refused to supply water suitable for domestic purposes, as provided for in section one of said ordinance, but that said water supply to the plaintiff city and its inhabitants has at all times been very impure and wholly unfit for domestic and drinking purposes.   (2) That said defendant has wholly failed and refused to comply with section fourteen of said ordinance, which requires said defendant to furnish fire pressure for fire service to the amount of 100 pounds to the square inch.   Plaintiff avers that such fire pressure has never been furnished to the amount of 100 pounds to the square inch, but that said fire service furnished has been notoriously inadequate and insufficient, to the great loss and damage of the said city and its inhabitants."

In determining the sufficiency of the first paragraph of the complaint, as against the Seymour Water Company, it will be profitable to note some matters which said paragraph omits to allege.   It does not charge (1) that a water-works system was ever built or maintained by said company or by anyone else in pursuance of said contract and franchise, or that anything has been done by virtue thereof; (2) that

said water company is attempting or threatening to use or occupy the streets or other public places of said city under said grant; (3) that said water company is asserting any claim or title by virtue of said grant, either adverse to the city or otherwise; (4) that said grant is a cloud upon the city's title.

Counsel for appellee contend that said paragraph is sufficient to quiet title. Section 1082 Burns 1901 provides that "an action may be brought by any person, either in or out of possession, or by one having an interest in the remainder or reversion, against another who claims title to or interest in real property adverse to him, although the defendant may not be in possession thereof for the purpose of determining and quieting the question of title." The principles upon which the statutory action to quiet title are based are, in a large measure, of equitable origin; and while such principles have been influential in the construction of the statute, yet the fact remains that the proceeding as it now exists is essentially the creature of legislative enactment. *Ragsdale* v. *Mitchell* (1884), 97 Ind. 458; *Trittipo* v. *Morgan* (1884), 99 Ind. 269; *Johnson* v. *Taylor* (1885), 106 Ind. 89; *Puterbaugh* v. *Puterbaugh* (1891), 131 Ind. 288, 15 L. R. A. 341.

In *Johnson* v. *Taylor, supra,* it was said concerning such statutory action that "the plaintiff or cross-complainant must allege in his complaint or cross-complaint that he is the owner of certain real estate, or of a certain interest therein, describing the same; and that the claim of the defendant to his action or cross-action, in or to such real estate or interest therein, is adverse to the title asserted by the plaintiff, or is unfounded and a cloud upon plaintiff's title." It should be stated in this connection, however, that in view of the code, a complaint to quiet title is not to be condemned because of the lack of any merely formal statement as to the nature of the defendant's claim, or of its relation to or its effect upon the plaintiff's title,

where the general facts alleged supply such formal allega-
tion as a necessary inference.    *Caress* v. *Foster* (1878),
62 Ind. 145; *Kitts* v. *Willson* (1885), 106 Ind. 147;
*Rausch* v. *Trustees, etc.* (1886), 107 Ind. 1; *Bisel* v.
*Tucker* (1889), 121 Ind. 249; *Wilson* v. *Wilson* (1890),
124 Ind. 472; *Island Coal Co.* v. *Streitlemier* (1894), 139
Ind. 83.

The above sufficiently indicates the standard by which a
complaint to quiet title must be measured, and, judged by
this standard, the paragraph of complaint in question falls
far short of stating a cause of action, under the statute,
against said company.

As to the other appellants, the question as to the suffi-
ciency of said first paragraph, viewed as a complaint to
quiet title, is more doubtful, but we have concluded that
it is not sufficient as to them.    What the property is upon
which said appellants have a deed of trust and mortgage
is altogether in doubt.    We infer that "said property" is
tangible in its character, since it is alleged to be "in and
about the city of Seymour," but we have looked in vain
for any corresponding antecedent.    So far as the assignment
of hydrant rentals is concerned, it is to be considered that
it is not alleged that a water plant has been constructed.
In other words, it does not appear that there is any cor-
poreal tenement out of which a rent could issue.    We are
not permitted to infer, in support of a barren allegation that
there has been an assignment of hydrant rentals, that the
assignment was of such a character as would, if valid, per-
mit the assignees to proceed upon their own initiative to do
any act to the prejudice of appellee's real estate.    As we
have seen, the statute provides that the action to quiet title
is to be brought against one "who claims title to or interest
in real property adverse to" the plaintiff, "for the purpose
of determining and quieting the question of title."    Here
the interest to which it is alleged  that said appellants lay
claim is not an interest in real property, but an "interest

in said contract." Such an interest might exist, and it might be adverse or opposed to the interest of appellee, and yet it might be of such a limited character, owing to the terms of the assignment, as in nowise to cloud the title of appellee to its real property.

All of these matters of uncertainty may be passed, however, because it is evident, when said paragraph is viewed from the standpoint of its general scope and structure, that it was intended as a paragraph to cancel a contract, and not as one to quiet title. This sufficiently explains why there was no averment in said paragraph that the water plant had been built, as the second paragraph and the evidence discloses. It was said by this court in *Platter* v. *City of Seymour* (1882), 86 Ind. 323, 326: "To permit an isolated statement to control the scope and meaning of a long and involved ,pleading would be destructive of all certainty in pleading, result in injury to litigants, and impose upon the trial court the burden of looking into out of the way places to discover if disconnected and irrelevant allegations existed which might change the drift of the general averments of the complaint. Such a system would make pleadings mere traps for the ensnaring of the adverse parties, and would give to pleadings a protean character, which all rules of practice condemn." Many authorities might be accumulated from our reports in support of the doctrine of *Platter* v. *City of Seymour, supra,* but we quote the above observations, since they are, for the most part, singularly apposite to this case.

. The paragraph in question is to procure the cancelation of a contract, and upon that theory it must be judged. Such a complaint must state facts sufficient to invoke the equity powers of the trial court. Assuming, as we may do, against the pleader, that the water-works plant has not been built, has any showing been made which would warrant the exercise of the equitable juisdiction to decree cancelation?

Professor Pomeroy states that where an estate, interest, or right is legal, the exercise of the jurisdiction of equity to decree cancelation "depends upon the adequacy of the legal remedies,—a party being left to his affirmative or defensive remedy at law, where full and complete justice can thereby be done." Pomeroy, Eq. Jurisp. (2d. ed.), §1377. See, also, *Insurance Co.* v. *Bailey* (1871), 13 Wall. 616, 20 L. Ed. 501; *Noah* v. *Webb* (1833), 1 Edw. Ch. 604; *Globe Mut. Life Ins. Co.* v. *Reals* (1879), 79 N. Y. 202; *Farmington Village Corp.* v. *Sandy River Nat. Bank* (1892), 85 Me. 46, 26 Atl. 965; *Wooden* v. *Wooden* (1836), 2 Green Ch. 429; *Boardman* v. *Jackson* (1875), 119 Mass. 161; *New York, etc., Express Co.* v. *Traders, etc., Ins. Co.* (1882), 132 Mass. 377, 42 Am. Rep. 440; *San Diego Flume Co.* v. *Souther* (1898), 90 Fed. 164, 32 C. C. A. 548; *McMillen* v. *Mason* (1888), 71 Wis. 405, 37 N. W. 253; *County of Ada* v. *Bullen Bridge Co.* (1896), 5 Ida. 79, 47 Pac. 818; *Hardy* v. *First Nat. Bank* (1891), 46 Kan. 88, 26 Pac. 423.

As the above authorities evince, some reason for equitable interference must always be shown in a bill or complaint for cancelation, where the remedy is not sought for the protection of an equitable estate, interest, or right. In *Hamilton* v. *Cummings* (1815), 1 Johns Ch. 517, Chancellor Kent upholds the power of equity to decree cancelation of instruments void at law, but he adds: "While I assert the authority of the court to sustain such bills, I am not to be understood as encouraging applications where the fitness of the exercise of the power of the court is not pretty strongly displayed." In *Town of Venice* v. *Woodruff* (1875), 62 N. Y. 462, it was said: "Whether, therefore, the question be regarded as one of jurisdiction or of practice, it is established, by the later decisions, that some special ground for equitable relief must be shown, and that the mere fact that the instrument ought not to be enforced

is insufficient, standing alone, to justify a resort to an equitable action."

As very appropriate here, although the language was used with reference to the remedy of injunction, we quote the following from the opinion of Dillon, J., in *Home Ins. Co.* v. *Stanchfield* (1870), 2 Abb. (U. S.) 1, 6: "No principle is more familiar than the one that where the law affords a full, complete, and adequate remedy, equity will not interfere. 'Chancery,' says Lord Bacon, 'is ordained to supply the law, not to subvert the law.' 4 Bacon's Works, 488. In other words, the parties must litigate in the law courts, unless there are good and legal reasons for invoking the aid of equity."

If appellee is right in its theory that there are illegal provisions in the ordinance which condemn it as a whole, then its invalidity may be said to be apparent upon a mere inspection. Our statute authorizes the quieting of title against an adverse claim, although the instrument on which it is based is void on its face. *Bishop* v. *Moorman* (1884), 98 Ind. 1, 49 Am. Rep. 731. And see *Reynolds* v. *Crawfordsville First Nat. Bank* (1884), 112 U. S. 405, 5 Sup. Ct. 213, 28 L. Ed. 733; *Green* v. *Glynn* (1880), 71 Ind. 336. Professor Pomeroy states that the refusal to treat such instruments as clouds operates in many instances as a denial of justice. Pomeroy, Eq. Jurisp. (2d ed.), §1399. But however this may be it is certain, in the absence of statute, that if an instrument which is void on its face can be canceled at all, it can only be done upon the averment and proof of some matter specially calculated to invoke the jurisdiction of equity, since the instrument itself could not be put to a wrongful use. Story, Eq. Jurisp. (13th ed.), §700; Pomeroy, Eq. Jurisp. (2d ed.), §§1377, 1399. Appellee's own theory as to the nature of the instrument, therefore, condemns the paragraph in question, when regarded in its proper light as a mere complaint to cancel a contract.

Whether a case could be said to have been made out as a matter of evidence, had the facts pleaded in said paragraph been shown upon a trial, where there would have been a right to indulge inferences, is another question. See *American Rolling Mill Co.* v. *Hullinger* (1904), 161 Ind. 673. We hold that said paragraph does not state a cause of action against appellants.

As heretofore shown, the second paragraph of complaint disclosed inferentially that the Seymour Water Company built and was engaged in operating a water plant in said city of Seymour. Said paragraph proceeds on the theory that there is a right to a decree of rescission for nonperformance in respect to the character and pressure of water provided.

The two remedies—rescission and cancelation—complement each other, and are referable to the same general head of equity jurisprudence. The lack of an adequate remedy at law is the ground on which the jurisdiction of rescission, as well as of cancelation, is asserted by courts of chancery. See Story, Eq. Jurisp. (13th ed.), §698. Rescission is the converse of specific performance. In a suit to annul a partially executed contract, the power of the court is sought, not to carry out and accomplish what the parties have begun, but to undo what they have accomplished. "Equity may refuse to revoke where it would decline to execute." *Delamater's Estate* (1836), 1 Whar. (Pa.) 362; *DuBois Borough* v. *DuBois City Water-Works Co.* (1896), 176 Pa. St. 430, 35 Atl. 248, 34 L. R. A. 92, 53 Am. St. 678. The Supreme Court of the United States has declared that "the cancelation of an executed contract is an exercise of the most extraordinary power of a court of equity." *Atlantic Delaine Co.* v. *James* (1877), 94 U. S. 207, 24 L. Ed. 112. In view of these considerations, a complaint for the rescission or cancelation of a contract which has been wholly or partially executed by the opposite party, should

show a necessity for such remedy, and especially should such complaint show the lack of an adequate remedy at law.

The writ of mandamus is an extraordinary remedy, but the action is at law, and, since the writ has lost its prerogative character, the proceeding is treated as in the nature of a civil action. The performance of *quasi* public duties growing out of the acceptance of municipal grants may be enforced by mandate. *Portland, etc., Oil Co.* v. *State, ex rel.* (1893), 135 Ind. 54, 21 L. R. A. 639; *People, ex rel.,* v. *Suburban R. Co.* (1899), 178 Ill. 594, 53 N. E. 349, 49 L. R. A. 650; *People, ex rel.,* v. *New York Sub. Water Co.* (1899), 56 N. Y. Supp. 364; Merrill, Mandamus, §27; 19 Am. and Eng. Ency. Law (2d ed.), 876. In *City of Topeka* v. *Topeka Water Co.* (1897), 58 Kan. 349, the city sought a rescission of a franchise to the water company for failure to extend its mains as required by contract. In holding that the action would not lie, the court said: "The state is not asking to reclaim the franchises bestowed by it upon the company, but the city seeks an annulment of the contract because of the nonperformance of a condition subsequent; and the failure to perform this condition is not made a ground of forfeiture. If, however, the company failed to carry out the purpose of its organization, and wilfully violated the provisions of the ordinance other than those specified as grounds of forfeiture, an annulment might in some instances be had; but, as has been before observed, a forfeiture is always abhorred, and, according to repeated decisions of this court, it will ordinarily not be declared where there is another adequate remedy. *State, ex rel.,* v. *Wilson* [1883], 30 Kan. 661; *Tarbox* v. *Sughrue* [1877], 36 Kan. 225; *Weston* v. *Lane* [1889], 40 Kan. 479. See, also, Thompson, Corporations, §6608; High, Extra. Legal Remedies (3d ed.), §649; 4 Am. and Eng. Ency. Law, 293, and cases cited. As determined in the cited cases, the court is vested with some discretion in such a proceeding; and, since it is slow to adjudge the

extreme penalty where the law has provided other sufficient remedies, the question arises—is mandamus a suitable and sufficient remedy? It has already been determined that a corporation organized to promote public works, and which has been granted a franchise by a city through an ordinance, may be compelled to perform its duties toward the public by a proceeding in mandamus. *City of Potwin Place* v. *Topeka R. Co.* [1893], 51 Kan. 609." See, also, *State, ex rel.,* v. *Galena Water Co.* (1901), 63 Kan. 317, 65 Pac. 257.

If the acceptance of the grant by the water company imposed upon it a duty to furnish a better quality of water than could be obtained from the stipulated source of supply at the place of intake, the averments of the paragraph of complaint should have shown that no remedy short of the drastic one sought would be sufficient. If, in view of the contract and the condition of the water supply, filtration were required, mandamus to compel the company to filter would not only be a remedy less harsh than that of forfeiture, but the suggested remedy would possess the merit of operating with directness upon the wrongful omission. The observation with reference to mandamus applies also to the matter of insufficient pressure. The circumstances would have to be quite exceptional to warrant a court, sitting as a court of equity, in indirectly enforcing a forfeiture for the nonperformance of a condition subsequent; and, as circumstances warranting such course are not shown in the paragraph under consideration, we adjudge said paragraph insufficient.

Judgment reversed, with an instruction to sustain the demurrer of appellants to both paragraphs of complaint.