(55 App. Div. 555.)

PEOPLE ex rel. O'BRIEN et al. v. KEATING, Commissioner of Highways.

(Supreme Court, Appellate Division, First Department. December 7, 1900.)

HIGHWAY COMMISSIONER—WATER COMPANY—OPENING STREETS—DISCRETION OF COMMISSIONER.

> The commissioner of the department of highways of New York City has no such discretion or power, under the New York City charter provision providing that a street may not be opened without his permission, as to justify him in refusing a water company permission to open a street in order to shut off water from certain premises because of an indebtedness for water, on the ground that it had been represented to him there was no indebtedness.

> Hatch, J., dissenting.

Appeal from special term, New York county.

Argued before VAN BRUNT, P. J., and HATCH, RUMSEY, PATTERSON, and INGRAHAM, JJ.

T. Connoly, for appellant.
H. H. Pierce, for respondents.

PATTERSON, J. The relators, receivers of the New York & Westchester Water Company, were granted a peremptory writ of mandamus requiring the defendant, commissioner of the department of highways of the city of New York, to grant forthwith an application made to him by them to open a street in the borough of the Bronx, New York City, "for the purpose of disconnecting, repairing, etc., the service pipe connecting the residence of Mrs. A. R. Conklin, now Mrs. Henderson, with the main of the New York & Westchester Company in said street." The defendant appeals from the order granting the writ.

It is not controverted that all the rights and privileges of the water company pertain to and may be exercised by the receivers; and among them is the right to lay mains, and, for proper and lawful purposes, to open the streets for placing and taking up and repairing mains, hydrants, and other structures and devices for the service of water. The company's rights were acquired under a contract made by authority of law with the town of Westchester while that town was a part of Westchester county. Upon the incorpora-

tion of that town within the territorial limits and under the municipal government of the city of New York, the water company's rights and privileges continued, but its authority to open streets is now dependent upon the procurement of a permit from the commissioner of the department of highways of the city of New York. With its rights and duties is a corresponding obligation of the water company to supply water to the occupants of houses in the district or territory in which the company carries on its business, and it is authorized to make contracts with the owners or occupants of such houses. The appellant admits that the relators have a general right to open the street for the purpose of tapping, repairing, or disconnecting pipes, but insists that the right is subject to reasonable limitations. He also admits that, before such right can be exercised, his assent must be obtained, and he contends that it is discretionary with him to grant or withhold a permit. On the 14th of March, and again on the 2d of April, 1900, the relators applied to the defendant for permission to open a street in Westchester, New York City, for the purpose of disconnecting the service pipe from the premises of Mrs. Conklin, situated on Madison avenue, in the borough of the Bronx. It was the service pipe by which water was supplied to those premises. The petition for the writ sets forth that Mrs. Conklin was in arrears for water rents since October 24, 1896; that those rents had been demanded and refused. A contract had been made between the company and Mrs. Conklin, upon her application, which, among other things, recites as follows: "And I expressly consent that in default of payment for the privileges derived from said connection with said premises that the water may be shut off until the rent is paid." The application made by the relators to the defendant to open the street was for the "permission to disconnect, repair, etc., pipe of the New York & Westchester Water Company * * * at property of Mrs. Conklin, now Mrs. Henderson, Madison avenue, West Farms road, Westchester." The defendant declined to grant the permit on the ground that it was represented to him that Mrs. Conklin was not a debtor to the water company; that she denied any indebtedness or liability to the company; and hence he would not grant the permit to open the street, the inference being that it would be unjust to do so; his refusal being, as he insists, a "reasonable limitation" upon the relator's right. The defendant thus places his refusal to perform an official act upon the sole ground of a controversy existing between private parties as to the ultimate right of one of them to do a certain thing, the initial step in doing which is the procurement of the permit. The relators' general right to a permit to open the street to repair or disconnect their pipes cannot be disputed. Granting a permit to make that opening is undoubtedly, to some extent, discretionary with the commissioner. That discretion may relate to the time at which, and the method and the conditions under which, the surface of the street may be disturbed, and also to the legality of the purpose; but we do not understand that the commissioner possesses an arbitrary discretion to withhold a permit simply because he is advised that a dispute exists respecting the right of a party under a contract by which that

party has consented that the supply of water shall be cut off unless payment of water rents is made pursuant to the contract. It is lawful for the relators to cut off the water supply furnished under the contract with Mrs. Conklin, if she has defaulted. It is not within the power or jurisdiction of the defendant to pass upon the merits of a controversy between Mrs. Conklin and the water company. The granting or withholding of a permit does not dispose of that controversy; nor would it necessarily result in the stopping of the water supply. Either Mrs. Conklin, or the present owner or occupant of the premises, upon a proper showing can enjoin acts under the permit, can compel the relators to supply the premises with water, or recover damages from the company for any unauthorized act done under the permit. In a case of this kind, where the only ground of objection to granting the permit is the existence of a controversy between the water company and the occupant of the premises concerning private rights, we do not think it is within the discretion of a public officer to refuse to perform that which, under the circumstances of this case, is merely a ministerial act, there being no public interest involved, and no question other than that of the right of the defendant to put himself in the place of a private party, and contest the relators' claim upon a private quarrel. The issuance of a permit does not impair the private rights of those entitled to a water supply. If they exist, the courts are open for their assertion. In this view of the case, the order appealed from was correct, and must be affirmed, with costs.

VAN BRUNT, P. J., and RUMSEY and INGRAHAM, JJ., concur.

HATCH, J. (dissenting). I am unable to agree with the conclusion reached by the majority of the court in this case. It appears from the record that the petitioners entered into a written contract under and by virtue of chapter 737 of the Laws of 1873 and the acts amendatory thereof and supplemental thereto. By the provisions of the act and the terms of the contract the water company, of which the petitioners are receivers, became obligated to furnish to the inhabitants of the town of Westchester a pure supply of water. This obligation was imperative upon the water company, and is binding upon the receivers, subject only to such reasonable rules and regulations as were necessary for the conduct of the business of the company, and the accomplishment of the purposes for which it was created; and, where compliance is had or tendered by an inhabitant desiring a water supply, the company becomes obligated to furnish the same, and the duty so to furnish may be enforced by mandamus. In re McGrath, 56 Hun, 76, 9 N. Y. Supp. 168; People v. New York Suburban Water Co., 38 App. Div. 413, 56 N. Y. Supp. 364. As the obligation rests upon the water company to furnish water to any inhabitant upon its line who complies with its rules and makes proper application therefor, it necessarily follows that it is also under obligation and charged with the duty of continuing such water supply as long as such inhabitant desires it and complies with the reasonable rules and regulations of the company, and, if the com-

pany or the petitioners refuse to perform such act, they become guilty of an illegal act, and are amenable to the courts for correction. The facts, as disclosed by the present record, show that the town of Westchester became a part of the city of New York under the act of consolidation, and from that time this company and the petitioners became subject to the jurisdiction of the authorities of the city of New York charged with the duty of supervising the method and manner of interference with the streets. It further appears that C. Adelbert Becker is the owner and Henry C. Henderson is the occupant of certain premises situate upon Main street in the town of Westchester; that said premises were formerly occupied by Anna R. Conklin, and that during the time of such occupancy the water company connected its water mains with, and furnished a supply of water to, said premises, for which it claims not to have been paid; and on account of such indebtedness it applies to the commissioner of the department of highways of the city of New York for a permit to open said street opposite said premises for the purpose of disconnecting the water supply thereof. By the provisions of section 525 of the charter of the city of New York such interference with the street is not authorized except a permit be first granted therefor by the commissioner of the department of highways. Upon application by the petitioners to said department for a permit to open this street the same was refused, and thereupon the petitioners made application, and obtained the order which has been granted in this case, the propriety of which is presented by the present appeal.

So far as I am able to find, it does not appear what the grounds were upon which the commissioner refused to issue the permit, except as it is stated in the petition for the writ, and that it was declined unless the petitioners specified the object for which they desired to open up the street. It seems to be conceded that the commissioner of the department of highways is vested with some discretion in respect to granting a permit to open the streets, and such discretion would seem to be implied from the fact of requiring a permit to issue before the street could be opened, and it seems to me that the commissioner would be acting clearly within a reasonable discretion by insisting that he should be informed of the purpose for which the petitioners desired to open the street. It would hardly be contended that he would be bound to grant a permit to open the street for the simple reason that the person making the application desired him so to do, and I am sure that it ought to be conceded that he is vested with sufficient discretion to refuse a permit to open the street for the purpose of committing an illegal act. So that in this case, if it did not appear otherwise what the purpose of the petitioners was in opening the street, then failure or refusal to specify the purpose furnishes ground for refusing the application, as otherwise it would not appear whether the application ought to be granted or not. But, for the purpose of the disposition of this application, it is to be assumed, and the declared purpose of the petitioners is, to open the streets in order to cut off the water supply to this dwelling. It may be conceded that if Mrs. Conklin was the occu-

pant of the premises, and had not paid the company for the use of the water which it furnished, a clear basis of right would exist upon the part of the company or its receivers to open the street, and cut off the supply of water; and I concede to the fullest extent that the commissioner would not be justified in refusing a permit for such purpose, even though it appeared that Mrs. Conklin denied any indebtedness upon her part to the company. Under such circumstances the commissioners would not be justified in intervening in favor of either party, or in refusing to perform a proper official act. Such, however, as I view this record, is not this case. On the contrary, the evidence clearly shows that Mrs. Conklin is not the owner of these premises, but Mr. Becker is; that she is not an occupant of such premises, but Mr. Henderson is; and the latter avers in his affidavit that he is not indebted to the company or the petitioners for water supplied to him, that he has complied with all the reasonable rules and regulations of the company, and that both he and the owner desire the water supply to be furnished thereto, and that the failure so to furnish is detrimental to the use of the premises and dangerous to health. In addition to this, the execution of the contract by Mrs. Conklin, which furnishes the basis of this application, is denied by her, and she also denies any indebtedness on her part to the company, or that she is an occupant of these premises; and the affidavit of Henderson shows that he alone is in the occupation and enjoyment. It is clear beyond dispute that these affidavits raise an issue as to the right of the company or the petitioners in the discharge of their statutory obligation to cut off the water supply to this dwelling, and, if the contest were between individuals in ordinary form, a peremptory writ could not issue, as all of the statements of the opposing affidavits are to be taken as true; and certainly, if their truth be assumed, no basis of right whatever exists to cut off this water supply, and this would be true even though it be conceded that Mrs. Conklin was indebted for a previous supply of water. There is no provision in the contract, or in the act authorizing it, between the town of Westchester and the company, which requires that a party in the occupation of premises, who is entitled to a water supply, can be legally refused because of the default of a prior owner or occupant to pay his or her water rates. Brass v. Rathbone, 153 N. Y. 435, 47 N. E. 905. If the commissioner is to be regarded as a party having the right to insist upon the legal rules applicable to motions for the issuance of writs of peremptory mandamus, it is clear from the facts at issue that the writ could not be granted. Is he so situated? It is conceded that he bears no relation, and can bear none, in the disputes of contending parties, and may not base his refusal to do an official act upon any such consideration. Assuming this view to be correct, does it follow that neither he nor the court have any power to examine into the facts beyond finding that a dispute exists, and that the petitioners demand the permit in order to exercise an apparent right. It cannot be denied but that the commissioner, in what he does, acts in a public capacity, and represents the public. When the petitioners make application for a writ, they must show a clear legal right thereto, and that the

thing which they seek to accomplish by virtue of the court's mandate is within their clear legal right to have. For the purpose of determining such question, both the party against whom the application is directed as well as the court to which it is made may inquire into the facts, and determine whether the act sought to be done is in all respects legal and proper. People v. Newton, 112 N. Y. 398, 19 N. E. 831, 3 L. R. A. 174. It is a conceded fact in this case that neither the owner nor the occupant of these premises are indebted to the company or to the petitioners in any sum whatever, and, so far as appears, never have been. The present occupant is entitled to have the petitioners furnish him with water, under the circumstances appearing in this case; and such right, as we have seen, he could enforce by mandamus, and doubtless he could enjoin the petitioners from interfering therewith. It is not presently of consequence what his legal rights are. The question presented upon this appeal is, do the petitioners show a clear right to be aided by this writ? Upon this record it appears beyond dispute that the purpose which they seek to accomplish is illegal in its character, and under such circumstances it seems clear to me that both the commissioner and the court are bound to take notice of such fact, and deny aid in its accomplishment. If this view be correct, then it was clearly within the discretionary power of the commissioner to refuse to issue a permit, as he did. This is clearly not a controversy over the fact as to whether the former tenant was indebted or not. It is simply a controversy as to whether the petitioners may make use of a writ of this court for an illegal purpose, and whether the commissioner may be coerced into becoming a party to its accomplishment. This court ought not to aid such a purpose upon the ground that the injured party may secure his legal rights through other remedies which may be open to him. They may be abundantly supplied in this direction, but that furnishes neither reason nor excuse for permitting these petitioners, in defiance of a statutory obligation, to work a wrong. For these reasons I think the order should be reversed, and the motion for the peremptory writ denied.